[980 NE2d 510, 956 NYS2d 462]

In the Matter of STATE OF NEW YORK, Respondent, v SHANNON S., Appellant.

Argued September 11, 2012; decided October 30, 2012

**POINTS OF COUNSEL**

*Davison Law Office, PLLC*, Canandaigua (*Mark C. Davison* of counsel), for appellant. I. The standard of proof beyond a reasonable doubt, rather than the standard of clear and convincing evidence, should have been applied in this proceeding. (*Matter of State of New York v Rashid*, 16 NY3d 1; *In re Winship*, 397 US 358; *United States v Comstock*, 627 F3d 513; *United States v Carta*, 592 F3d 34; *Matter of State of New York v Farnsworth*, 75 AD3d 14, 15 NY3d 848; *State of New York v Robert V.*, 31 Misc 3d 1210[A], 2011 NY Slip Op 50552[U], 33 Misc 3d 1208[A], 2011 NY Slip Op 51819[U]; *Matter of State of New York v Daniel OO.*, 88 AD3d 212; *Poole v Goodno*, 335 F3d 705; *United States v Sahhar*, 917 F2d 1197; *Matter of State of New York v Campany*, 77 AD3d 92.) II. Without proof of a diagnosis from the Diagnostic and Statistical Manual, the evidence is legally insufficient to support a determination that a person suffers from a mental abnormality. (*O'Connor v Donaldson*, 422 US 563; *Kansas v Hendricks*, 521 US 346; *Foucha v Louisiana*, 504 US 71; *Kansas v Crane*, 534 US 407; *Matter of Jamie R. v Consilvio*, 6 NY3d 138; *Matter of David B.*, 97 NY2d 267; *Matter of State of New York v Shawn X.*, 69 AD3d 165, 14 NY3d 702; *United States v Carta*, 592 F3d 34; *Seling v Young*, 531 US 250;

*Allen v Illinois*, 478 US 364.) III. Civil confinement should not have been ordered without a factual finding that no less restrictive alternative was appropriate. (*Matter of Torsney*, 47 NY2d 667; *Matter of Kesselbrenner v Anonymous*, 33 NY2d 161; *Covington v Harris*, 419 F2d 617; *Kansas v Crane*, 534 US 407; *Matter of K.L.*, 1 NY3d 362; *Matter of Rhodanna C.B.*, 36 AD3d 106; *Rivers v Katz*, 67 NY2d 485, 68 NY2d 808; *Matter of Simone D.*, 9 NY3d 828; *Matter of State of New York v Flagg*, 77 AD3d 1400, 17 NY3d 784; *Matter of State of New York v Donald N.*, 63 AD3d 1391.) IV. When there is no finding of a dangerousness at a probable cause hearing, respondent in a Mental Hygiene Law article 10 proceeding must be released before trial. (*Matter of State of New York v Reeve*, 87 AD3d 1378; *James v Powell*, 19 NY2d 249; *Trocom Constr. Corp. v Consolidated Edison Co. of N.Y., Inc.*, 7 AD3d 434; *Matter of Hearst Corp. v Clyne*, 50 NY2d 707; *Matter of State of New York v Sanchez*, 22 Misc 3d 1123[A], 2009 NY Slip Op 50256[U]; *People v Brooks*, 19 Misc 3d 407; *Matter of State of New York v Rashid*, 25 Misc 3d 318, 68 AD3d 615, 16 NY3d 1; *Matter of State of New York v Pagan*, 26 Misc 3d 1241[A], 2010 NY Slip Op 50506[U]; *Matter of State of New York v Thompson*, 24 Misc 3d 1208[A], 2009 NY Slip Op 51306[U]; *Matter of State of New York v P.H.*, 22 Misc 3d 689.) V. The trial court improperly reopened the proof sua sponte. (*People v Arnold*, 98 NY2d 63; *Matter of Kyle FF.*, 85 AD3d 1463; *Matter of Yadiel Roque C.*, 17 AD3d 1168; *Capodiferro v Capodiferro*, 77 AD3d 1449; *Mitchell v New York Hosp.*, 61 NY2d 208; *Town of Orangetown v Magee*, 88 NY2d 41; *People v Zawistowski*, 168 AD2d 950; *People v Mendez*, 225 AD2d 1051; *People v Whipple*, 97 NY2d 1; *People v Olsen*, 34 NY2d 349.)

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Treasure, Barbara D. Underwood* and *Andrea Oser* of counsel), for respondent. I. Respondent failed to preserve his challenge to Mental Hygiene Law article 10's "clear and convincing evidence" standard of proof, and that standard satisfies due process in any event. (*People v O'Hara*, 96 NY2d 378; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg*, 79 NY2d 244; *Matter of Barbara C.*, 64 NY2d 866; *People ex rel. Battista v Christian*, 249 NY 314; *Misicki v Caradonna*, 12 NY3d 511; *People v Harnett*, 16 NY3d 200; *Matter of Rivera v Smith*, 63 NY2d 501; *People v Baumann & Sons Buses, Inc.*, 6 NY3d 404; *Dalton v Pataki*, 5 NY3d 243; *People v Knox*, 12 NY3d 60.) II. Respondent failed to preserve his claim that due process precludes a finding of mental abnormality absent a mental condition recognized by the DSM-IV, and that claim is academic

here. (*People v Dozier*, 52 NY2d 781; *People v Hawkins*, 11 NY3d 484; *Matter of Barbara C.*, 64 NY2d 866; *Matter of Hofbauer*, 47 NY2d 648.) III. The disposition of confinement comports with due process. (*Melahn v Hearn*, 60 NY2d 944; *People v Hawkins*, 11 NY3d 484; *Matter of Barbara C.*, 64 NY2d 866; *Matter of George L.*, 85 NY2d 295; *Matter of State of New York v Fox*, 79 AD3d 1782; *Matter of State of New York v Richard VV.*, 74 AD3d 1402; *Matter of State of New York v Motzer*, 79 AD3d 1687; *Matter of State of New York v Donald N.*, 63 AD3d 1391.) IV. Mental Hygiene Law article 10 expressly precludes respondent's appeal from the probable cause determination, which in any event is subsumed by the final disposition. (*People ex rel. Campolito v Bennett*, 296 AD2d 835, 98 NY2d 615; *People ex rel. Reamy v Director of Cent. Islip State Hosp.*, 35 AD2d 595.) V. The Fourth Department properly rejected respondent's claim that Supreme Court's decision to reopen the record warranted a new trial. (*People v Arnold*, 98 NY2d 63; *People v Moulton*, 43 NY2d 944; *People v Jamison*, 47 NY2d 882; *People v Johnson*, 82 AD3d 415; *People v DeLeyden*, 10 NY2d 293.)

## OPINION OF THE COURT

JONES, J.

The primary issue on this appeal is whether there was legally sufficient evidence to support the finding that respondent Shannon S. suffers from a mental abnormality as defined under article 10 of the Mental Hygiene Law. On the particular facts of this case, we hold there was.

Respondent has an extensive criminal record which includes various sexual offenses involving nonconsenting or underage, adolescent victims. In 1992, at 19 years of age, respondent was charged with sexual abuse in the third degree for pinning down a female acquaintance on her bed, removing her shirt and fondling her while she struggled to push him away. Respondent subsequently pleaded guilty to disorderly conduct and was sentenced to time served. In 1997, at 24 years of age, respondent was charged with rape in the third degree for supplying a 15-year-old girl with marijuana and alcohol, and engaging in sexual intercourse. Respondent pleaded guilty to sexual misconduct in satisfaction of the charge and was sentenced to a conditional discharge and a fine. Two years later, in 1999, respondent was charged with the forcible rape and sodomy of a 13-year-old girl who was babysitting for his sister; the violent nature of the attack resulted in the hospitalization of the victim.

Respondent pleaded guilty to rape in the second degree and was sentenced to an indeterminate term of 1 to 3 years' incarceration.

Upon release in 2002, respondent, at age 30, commenced a sexual relationship with a 16-year-old girl that resulted in her pregnancy. As a result of this relationship, respondent was subsequently charged in 2003 with rape in the third degree, criminal sexual act in the third degree and endangering the welfare of a child. Respondent, however, absconded and was not prosecuted until 2005 when he was apprehended in Florida and returned to New York. Respondent pleaded guilty to criminal sexual act in the third degree and received a sentence of 2 to 4 years' imprisonment.

While incarcerated, respondent was interviewed, at the request of the New York State Office of Mental Health, by Dr. Jacob E. Hadden, a licensed psychologist and psychiatric examiner. As a result of his personal examination of respondent and a review of the available criminal records, Dr. Hadden diagnosed respondent with paraphilia not otherwise specified (paraphilia NOS), antisocial personality disorder, as well as alcohol abuse. In a written evaluation report, Dr. Hadden concluded that respondent suffers from a mental abnormality within the meaning of article 10 of the Mental Hygiene Law that predisposes him to the commission of sexual offenses and makes it difficult for him to control such behavior. Specifically, Dr. Hadden noted that respondent's criminal history "demonstrated a deviant sexual interest in adolescents below the age of consent" and "his six year pattern of sexual offending behavior toward adolescent females, despite repeated sanctions, and his pronounced cognitive distortions involving sexual relationships with children indicate the presence of a paraphilic disorder with regard to nonconsenting adolescent females." Significantly, it was observed that respondent was "unable to give a coherent explanation of why adults should not have sex with children" and instead "he expressed frustration with several of his victims that they reported the incidents."

As a result, the State filed a petition commencing a proceeding under article 10 for the civil management of respondent (Mental Hygiene Law § 10.06 [a]). In an ensuing probable cause hearing, Supreme Court concluded that probable cause had been established that respondent was a sex offender requiring civil management and directed that he be detained at a secure

treatment facility pending trial (Mental Hygiene Law § 10.06 [k]).[1]

At the subsequent nonjury trial, Dr. Hadden reiterated his prior conclusions, opining that respondent suffers from paraphilia NOS, antisocial personality disorder and alcohol abuse without physiological dependence in a controlled environment. Paraphilia NOS was defined as "recurrent and intense sexual fantasies, urges, or behaviors which involve . . . [t]he physical or psychological suffering, including the humiliation of oneself or one's partner or children or other nonconsenting partners which occurs over a period of at least six months and results in personal distress or impairment in some clinically significant area of functioning." According to Dr. Hadden, respondent's "four sex offenses with nonconsenting partners" fell within the plain definition of paraphilia NOS; more notably, the 1997, 1999 and 2003 offenses also demonstrated respondent's particular sexual proclivity for females below the age of consent. In Dr. Hadden's view, respondent's continuous engagement in sexual relationships with pubescent females, despite his extensive criminal punishments and ostensible attraction to adult females, evinced a compulsive attraction to minor, adolescent females. It was further concluded that respondent's "impulsive" behavior and "irritability and aggressiveness," supported a finding that his paraphilic urges constituted a "congenital or acquired condition" affecting his "emotional, cognitive [and] volitional capacity" and ability to control his sexual offending conduct.

Dr. Stuart M. Kirschner similarly diagnosed respondent as suffering from paraphilia NOS based on his personal examination of respondent and review of respondent's criminal history. Dr. Kirschner determined that respondent's sexual history, particularly his recurrent sexual offenses involving nonconsenting minors, satisfied the diagnostic criteria for paraphilia NOS and reflected an apparent attraction to pubescent girls—a form of paraphilia known as hebephilia. Dr. Kirschner further testified that the absence of hebephilia from the Diagnostic and Statistical Manual of Mental Disorders (DSM), an authoritative text widely used in the mental health profession, would not preclude such a diagnosis, explaining that the DSM "is

---

1. At the conclusion of the probable cause hearing, respondent signed a written consent form to remain in the custody of the Department of Correctional Services at the Wyoming Correctional Facility pending trial.

extremely limited in terms of the paraphilias that are cited" as it only lists "some of the things that a clinician might address in the manual" and, thus, is not intended to be "exhaustive in that sense."

Dr. Charles P. Ewing, who testified on respondent's behalf, concluded otherwise, stating that there was insufficient evidence to determine that respondent suffers from recurrent, intense sexual urges or behaviors. In Dr. Ewing's view, there was no evidence that respondent "was sexually aroused particularly by teenage girls"; the three criminal incidents involving pubescent females constituted forcible rape and statutory rape, but were statistically insignificant to base a complete diagnosis that respondent suffers from a mental abnormality. Although he testified that paraphilia NOS is recognized by the DSM, Dr. Ewing took issue with the diagnoses of paraphilia NOS and hebephilia, arguing that hebephilia is neither abnormal nor deviant as "most males are sexually attracted to fully formed pubescent women." Moreover, Dr. Ewing stated that a diagnosis of paraphilia NOS should be reserved for individuals who suffer from sexual disorders that are widely recognized by the medical community and are so unusual as to be "statistically deviant" and "morally deviant," such as pedophilia.

Supreme Court concluded that the State had proven by clear and convincing evidence that respondent suffers from a mental abnormality under article 10 and ordered a dispositional hearing (Mental Hygiene Law § 10.07 [d]). At the subsequent hearing, respondent was found to be a dangerous sex offender requiring civil confinement and was ordered to be committed to a secure treatment facility (Mental Hygiene Law § 10.07 [f]).

The Appellate Division unanimously affirmed (85 AD3d 1646 [4th Dept 2011]) and this Court granted respondent leave to appeal (17 NY3d 894 [2011]).

Respondent's primary contention on this appeal is that absent a diagnosis of a mental disease or disorder listed within the DSM, the evidence is legally insufficient to support a determination that an individual suffers from a mental abnormality under the Mental Hygiene Law. Specifically, respondent asserts that a diagnosis of a mental disorder or defect not contained within the DSM renders it unreliable and militates against its viability as a predicate medical condition for a finding of a mental abnormality.

The United States Supreme Court has previously remarked that "the States have, over the years, developed numerous specialized terms to define mental health concepts" (*Kansas v Hendricks*, 521 US 346, 359 [1997]), and in the context of civil confinement of dangerous sexual offenders, state legislatures have been granted the latitude to utilize phraseology that, while informed by prevailing medical knowledge, is intended to have greater legal, and not medical, significance. Thus, in the civil confinement arena, there will undoubtedly be an "imperfect fit between the questions of ultimate concern to the law and the information contained in [the DSM's] clinical diagnosis" (*Clark v Arizona*, 548 US 735, 775 [2006]; *Kansas v Crane*, 534 US 407, 413 [2002] ["(T)he science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law"]). In New York, the plain language of Mental Hygiene Law § 10.03 (i), in defining a mental abnormality,[2] like the analogue statutes of several states (*see In re Commitment of Frankovitch*, 211 Ariz 370, 375, 121 P3d 1240, 1245 [Ct App 2005]; *Commonwealth v Starkus*, 69 Mass App Ct 326, 336, 867 NE2d 811, 820 [2007]), does not reference or require that a diagnosis be limited to mental disorders enumerated within the DSM. Therefore, contrary to respondent's argument, a mental abnormality "need not necessarily be one so identified in the DSM in order to meet the statutory requirement" (*United States v Carta*, 592 F3d 34, 40 [1st Cir 2010]).

Respondent also asserts that a diagnosis lacking in recognition by the mental health community and scientific foundation would contravene the rehabilitative purpose of article 10, thereby indefinitely confining offenders for want of a meaningful way to cure or mitigate mental disorders or defects that predispose offenders to the commission of sexual offenses. That is, no cure exists for an amorphously defined and medically tenuous diagnosis. Understandably, respondent fears the widespread use of untested, nascent or outlier mental disorders or defects in article 10 civil confinement proceedings. Certain diagnoses may, of course, be premised on such scant or untested evidence and "be so devoid of content, or so near-universal in

---

**2.** A mental abnormality is defined as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]).

[their] rejection by mental health professionals," as to be violative of constitutional due process and preclude their meaningful use in civil confinement proceedings (*McGee v Bartow*, 593 F3d 556, 577 [7th Cir 2010]). Paraphilia NOS, however, has been found to be a viable predicate mental disorder or defect that comports with minimal due process (*see Carta*, 592 F3d at 40-42; *Brown v Watters*, 599 F3d 602, 611-612 [7th Cir 2010]; *McGee*, 593 F3d at 567-572). Furthermore, any issue pertaining to the reliability of paraphilia NOS as a predicate condition for a finding of mental abnormality has been viewed as a factor relevant to the weight to be attributed to the diagnosis, an issue properly reserved for resolution by the factfinder (*see Matter of State of New York v Leon F.*, 84 AD3d 1098, 1100-1101 [2d Dept 2011]; *Matter of State of New York v Myron P.*, 86 AD3d 26, 28 [3d Dept 2011]; *Carta*, 592 F3d at 39-40; *Brown*, 599 F3d at 612). Any professional debate over the viability and reliability of paraphilia NOS is subject to the adversarial process which, by vigorous cross-examination, would "expose the strengths and weaknesses of the professional medical opinions offered" in reaching a considered legal determination as to whether a respondent suffers a mental abnormality, as defined by statute (*Brown*, 599 F3d at 612; *Matter of State of New York v Andrew O.*, 16 NY3d 841, 844 [2011] ["The trial, however, boiled down to a battle of the experts"]).

In any event, respondent was diagnosed by the State's experts as suffering from paraphilia NOS, a mental condition included in the DSM, as Dr. Ewing agreed. Indeed, Dr. Kirschner explained that each recognized diagnostic group in the DSM includes a respective "not otherwise specified category," including paraphilia. Paraphilia NOS was described as "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors" that "cause clinically significant distress or impairment in social, occupational, or other important areas of functioning" and are directed at, as relevant here, the suffering or humiliation of "children or other nonconsenting persons." Respondent's behavior was found to satisfy these criteria, and was particularly characterized as hebephilia, a condition subsumed by the paraphilia NOS subcategory.

As such, on the particular facts presented here, there was an adequate record to assess the diagnosis of paraphilia NOS and we find no basis to disturb the affirmed findings of the lower court. The State's expert witnesses opined that respondent's 1997, 1999 and 2003 sexual offenses against adolescent victims

demonstrated an attraction to nonconsenting minors that satisfied the plain definition of paraphilia NOS and evinced symptoms of hebephilia. Further, to establish that respondent's sexual offenses were the result of a mental abnormality, and not merely a series of isolated criminal incidents, both Drs. Hadden and Kirschner identified respondent's lack of compunction and incapability to comprehend the inappropriateness of his conduct. More significantly, respondent's recurrent engagement in sexual conduct with pubescent females, despite numerous criminal sanctions and an asserted attraction to adult females, coupled with his impulsive sexual behavior, amply demonstrated respondent's compulsion to act upon sexual urges pertaining to pubescent females, thus supporting a finding that respondent suffers from a mental abnormality "involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; *see Matter of State of New York v Donald N.*, 63 AD3d 1391, 1394 [3d Dept 2009]; *Matter of State of New York v Derrick B.*, 68 AD3d 1124, 1126-1127 [2d Dept 2009]; *Matter of John N.*, 52 AD3d 834, 835-836 [2d Dept 2008]).

Respondent's remaining contentions are either unpreserved or without merit.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

SMITH, J. (dissenting). It is established that statutes like Mental Hygiene Law article 10, under which sex offenders who have mental abnormalities that make them dangerous may be committed to mental health facilities "for care, treatment and control" (Mental Hygiene Law § 10.06 [k]), are constitutional (*Kansas v Hendricks*, 521 US 346 [1997]). And even if the question had not already been decided, it would be hard to argue that the civil commitment of mentally abnormal sex offenders is constitutionally forbidden per se. It is permissible, as a general rule, to use civil proceedings to commit to institutions people who are mentally ill and dangerous to themselves or others (*see Addington v Texas*, 441 US 418 [1979]), and it hardly seems possible that dangerous sex offenders could be an exception to that rule.

Nevertheless, article 10 and kindred statutes create dangers of abuse—abuse that could threaten some very important

principles. Many sex offenders are, or could reasonably be found to be, dangerous, and in common parlance they all have mental abnormalities: Mentally normal people do not commit sex crimes. Thus, unless "mental abnormality" is defined with scientific rigor, such statutes could become a license to lock up indefinitely, without invoking the cumbersome procedures of the criminal law, every sex offender a judge or jury thinks likely to offend again.

Some will intuitively respond: Not a bad idea. But it is a very bad idea, because not even a concern for public safety should be allowed to trump certain fundamental rules. Among them are that criminals can be confined only for crimes they have committed, after their guilt is proved beyond a reasonable doubt in a procedure in which they receive the many protections that our Constitution gives to those accused of crime, and that even when convicted they can be incarcerated for no more than the term of the maximum sentence provided by law. If the present sentences for sex offenders are too short, the legislature should make them longer, but it should not, and constitutionally cannot, simply substitute civil for criminal proceedings as a means of keeping dangerous criminals off the streets (*see Kansas v Hendricks*, 521 US at 372-373 [Kennedy, J., concurring]).

Thus the scope of statutes permitting the civil commitment of sex offenders must be kept within strict bounds. The United States Supreme Court, even while upholding such statutes, has made that clear. In his concurring opinion in *Hendricks*, Justice Kennedy—whose vote was necessary to the decision—wrote separately "to caution against dangers inherent when a civil confinement law is used in conjunction with the criminal process" (521 US at 371-372 [Kennedy, J., concurring]). He remarked: "If . . . civil confinement were to become a mechanism for retribution or general deterrence, or if it were shown that mental abnormality is too imprecise a category to offer a solid basis for concluding that civil detention is justified, our precedents would not suffice to validate it" (*id.* at 373; *see also Kansas v Crane*, 534 US 407, 412 [2002] [quoting Justice Kennedy's *Hendricks* concurrence]; *Foucha v Louisiana*, 504 US 71, 82-83 [1992]).

The Supreme Court has warned that the application of statutes like article 10 must be limited to people who can be shown by scientifically valid criteria to have a "serious mental illness, abnormality, or disorder"—one that distinguishes them "from the dangerous but typical recidivist convicted in an

ordinary criminal case" (*Kansas v Crane*, 534 US at 413). Appellant here seems to me to be a prototype of "the dangerous but typical recidivist convicted in an ordinary criminal case." I see nothing in this record to support a finding that he is any more mentally abnormal than any other repeat sex offender. I therefore dissent from the majority's holding that he may be committed indefinitely to a mental health facility in a civil proceeding.

The majority accepts as sufficient to support civil commitment the diagnoses proffered by the State's experts that appellant suffers from "paraphilia not otherwise specified" (paraphilia NOS) and "hebephilia." The majority also mentions the State experts' diagnosis of "antisocial personality disorder" (ASPD) (majority op at 103), but wisely does not rely on it, for ASPD, at least as used by the State's experts in this case, means little more than a deep-seated tendency to commit crimes. One of the State's experts acknowledged that "maybe somewhere around half" of the prison population could be labeled as having ASPD. If a diagnosis of ASPD could support civil commitment, the State could have locked up half of those now in prison without bothering with the complexities of the criminal law.

The diagnoses the majority does accept, paraphilia NOS and hebephilia, are problematic for several reasons. As applied to this case, they are not supported by the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), the standard classification used by mental health professionals in this country. Paraphilia NOS is listed in the DSM-IV-TR, but only as a "residual category" for "Paraphilias that are less frequently encountered" (DSM-IV-TR at 567)—examples given include necrophilia (attraction to corpses) and zoophilia (to animals) (*id.* at 576). The DSM-IV-TR description of paraphilia NOS is plainly not applicable to the appellant's "abnormality"—a tendency to have sex with teenaged girls. And hebephilia—a State's expert's name for that tendency—is not in the DSM-IV-TR at all.

Appellant's expert gave testimony that seems to me to support a finding that these two diagnoses, as presented by the State's experts, amount to junk science devised for the purpose of locking up dangerous criminals. I have grave doubt whether either diagnosis would survive a *Frye* hearing to determine whether it is "sufficiently established to have gained general acceptance" in the psychiatric community (*Frye v United States*, 293 F 1013, 1014 [DC Cir 1923]). But no *Frye* hearing was held,

the factfinder below accepted the State's experts' testimony, and I am not prepared to say as a matter of law that no diagnosis not mentioned in the DSM-IV-TR can have scientific validity. Thus I will assume for present purposes that the diagnoses of paraphilia NOS and hebephilia on which the State relied are scientifically defensible.

Even on that assumption, these diagnoses cannot be the basis for civil commitment in a case like this. That is because they do not perform the task that the Supreme Court in *Crane* said such a diagnosis must perform: "to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case" (534 US at 413). As to paraphilia NOS, I can demonstrate the problem simply by repeating the majority's quotation from a State expert's definition of that ailment:

> "recurrent and intense sexual fantasies, urges, or behaviors which involve . . . [t]he physical or psychological suffering, including the humiliation of oneself or one's partner or children or other non-consenting partners which occurs over a period of at least six months and results in personal distress or impairment in some clinically significant area of functioning" (majority op at 104).

This could describe the mental state of every dangerous rapist.

As for hebephilia, an expert testifying for the State defined it by distinguishing it from an indisputably recognized disorder, pedophilia, an attraction to prepubescent children. There is no evidence, the expert acknowledged, that appellant is a pedophile; rather he "is more inclined toward pubescent females, which would technically make him more of a hebephile." But of course, the idea that a man's mere *attraction* to pubescent females is abnormal is absurd. What is abnormal about appellant, and others who commit statutory rape by having sex with girls below the age of consent, is not that they find the girls attractive, but that they are willing to exploit them for their sexual plea-sure—in other words, they commit statutory rape.

In short, in the State's lexicon, paraphilia NOS is essentially a tendency to commit rape, and hebephilia a tendency to com-mit statutory rape. If these are mental abnormalities warrant-ing civil commitment, most if not all of the people who commit these crimes can be civilly committed. But, as Justice Kennedy

pointed out in his *Hendricks* concurrence, a statutory interpretation that permits "civil confinement . . . to become a mechanism for retribution or general deterrence" cannot be sustained under Supreme Court precedent (521 US at 373).

Appellant seems, from the record in this case, to be a very bad actor. The community may well be safer if he is kept behind bars. But to put him there on the fiction that he has some sort of mental condition other than a tendency to commit the crimes for which he was convicted (and has served his time) is and should be constitutionally unacceptable. I therefore dissent.

Judges CIPARICK, GRAFFEO and READ concur with Judge JONES; Judge SMITH dissents in a separate opinion in which Chief Judge LIPPMAN and Judge PIGOTT concur.

Order affirmed, without costs.