Rivera, J.
(concurring in Matter of State of New York v Dennis K. and dissenting in Matter of State of New York v Anthony N. and Matter of State of New York v Richard TT.). I concur in Matter of State of New York v Dennis K. based on our existing case law and the record developed at respondent’s Mental Hygiene Law article 10 trial. However, I dissent in Matter of State of New York v Anthony N. and Matter of State of New York v Richard TT. because in my opinion a diagnosis of borderline personality disorder (BPD) may not establish, as a legal matter, the basis for civil management, and the records in these cases are otherwise devoid of facts sufficient to support civil confinement.
I.
A “mental abnormality” is defined as
“a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct” (Mental Hygiene Law § 10.03 [i]).
*753 Sex offenders with “mental abnormalities that predispose them to engage in repeated sex offenses . . . may require long-term specialized treatment modalities to address their risk to re-offend” (Mental Hygiene Law § 10.01 [b]), including strict and intensive outpatient supervision (Mental Hygiene Law § 10.01 [c]) and, “[i]n extreme cases, confinement [for] the most dangerous offenders ... in order to provide them such treatment and to protect the public from their recidivistic conduct” (id. § 10.01 [b]).
As a matter of substantive due process, the statute must set up a mechanism for “distinguish [ing] the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects [the offender] to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case” (Kansas v Crane, 534 US 407, 413 [2002], citing Kansas v Hendricks, 521 US 346, 357-358 [1997]). “A state may only use civil process to confine a sex offender for treatment of ‘mental abnormality . . . that makes it difficult, if not impossible, for the person to control his [or her] dangerous behavior’ ” (Matter of State of New York v Floyd Y., 22 NY3d 95, 103 [2013] [internal quotation marks omitted], quoting Hendricks, 521 US at 358).
The loss of liberty and risk of long-term, if not permanent, confinement at stake in article 10 proceedings counsels that the statute be narrowly interpreted to ensure that those subject to civil management are the aberrational recidivist sex offenders. In furtherance of the twin goals of article 10 — public safety and treatment — civil management is meant to protect the public from a particular class of dangerous sex offenders and to provide for those offenders’ therapeutic treatment. The statutory distinction between a sex offender with a mental abnormality that prevents sexual impulse control, and a recidivist, is the animating feature of the statute. Without it, article 10 could not survive constitutional scrutiny.
II.

Dennis K.

The Court has previously sanctioned a diagnosis of paraphilia NOS as a predicate mental disorder or defect to a finding of a mental abnormality within the meaning of Mental Hygiene Law § 10.03 (i) (Matter of State of New York v Shannon S., 20 NY3d 99, 107 [2012]). Similarly, in Dennis K., respondent’s *754 diagnosis of paraphilia NOS and antisocial personality disorder (ASPD) could serve as a basis for the jury’s mental abnormality finding. Respondent’s challenge to the scientific basis for this diagnosis is appropriately left .to a hearing in accordance with Frye v United States (293 F 1013 [DC Cir 1923]), which he did not request.
As discussed by the majority, on the facts presented, there was sufficient evidence that respondent suffers from a mental abnormality (Mental Hygiene Law § 10.03 [i]). Notably, respondent identifies himself as a “sadistic power rapist,” who is aroused by exercising power over his non-consenting partners. Respondent’s statements, along with the other evidence of his inability to control his urges leading to his paraphilia NOS and ASPD diagnoses, distinguishes him from other rapists and places him within the class of sex offenders subject to civil management under article 10. For the reasons stated in the majority opinion, I agree that respondent’s other claims are without merit.
Anthony N, and Richard TT.
In Anthony N. and Richard TT. the majority has effectively overruled, in part, Matter of State of New York v Donald DD. (24 NY3d 174 [2014]). The majority states that Donald DD. did not mandate a finding of a sexual disorder (majority op at 743 n 9, 750). This interpretation is not supported by our holding in Donald DD. that a sole diagnosis of ASPD, together with evidence of sexual crimes, could never serve as the basis for a finding of mental abnormality under article 10. The Court explained, “[t]he problem is that ASPD establishes only a general tendency toward criminality, and has no necessary relationship to a difficulty in controlling one’s sexual behavior” (Donald DD., 24 NY3d at 191). If the majority’s current view accurately reflected the Court’s analysis in Donald DD., the dissent would not have criticized the Court for essentially redefining “mental abnormality” under article 10. The dissent maintained that the Court “equate [d] a ‘congenital or acquired condition, disease or disorder’ with a ‘mental abnormality’ ” (24 NY3d at 194 [Graffeo, J., dissenting]). As a result, the Court “implicitly inject[ed] a requirement that the underlying disorder be ‘sexually-related’ into Mental Hygiene Law § 10.03 (i)” (id. at 196). The Court did not reject this interpretation of its analysis. In fact, there is no response to the dissent on this point at all. Instead, the Court doubled-down, quoting approv *755 ingly respondent’s counsel that “ASPD is ‘not a sexual disorder’ ” (id. at 190). Even the State’s expert in Donald DD., and the expert in the companion case of Matter of State of New York v Kenneth T, acknowledged that ASPD did not predispose a person to commit conduct constituting a sex offense (id.). Since there is no basis to overrule Donald DD., we are bound by its reasoning and holding.
Turning to the appeals in Anthony N. and Richard TT, the Court must determine whether a BPD diagnosis falls on the Shannon S. or the Donald DD. side of the line we have drawn between a diagnosis that serves as a predicate for civil management, and one that does no more than identify general criminality. In my opinion, a BPD diagnosis raises the same concerns associated with ASPD that we found dispositive in Donald DD. Like ASPD, BPD is prevalent among the prison population, with some studies suggesting that 25% to 50% of prisoners suffer from BPD (Randy A. Sansone & Lori A. San-sone, Borderline Personality and Criminality, 6 [No. 10] Psychiatry [Edgmont] 16 [2009]; see Donald DD., 24 NY3d at 189-190). Admittedly both are a class of personality disorder, although BPD is somewhat different from ASPD, because impulsivity is a central characteristic of BPD, and may include manifestations of sexual impulsivity. However, a BPD diagnosis does not require sexual impulsivity expressed by behaviors constituting sexual offenses. In fact, the Diagnostic and Statistical Manual of Mental Disorders (5th ed) does not associate BPD with sex-offending conduct.
In Anthony N., one of the State’s experts, Dr. Lord, testified that a BPD diagnosis does not mean that a person has a mental abnormality, and the other state expert, Dr. Thomassen, explained that BPD is not a common diagnosis for sex offenders, so he looked for a linkage between BPD and the risk of re-offending. The experts basically pathologized battering, upon which they based their diagnoses.*
Dr. Lord concluded that Anthony N.’s mental abnormality was evidenced by his belief that he was entitled to sex on demand and his history of relationships and sexual offenses. *756 Dr. Lord testified that he diagnosed Anthony N. with BPD because of his displays of emotional instability, impulsivity and irritability, often to the point of violence. Dr. Lord added that Anthony N. has serious difficulty in controlling his behavior, as evidenced by his recurring sexual offenses “despite many interventions with the legal community.”
According to Thomassen, Anthony N. has a
“desperate need to have some relationship or contact with women to which he is connected or wishes to have connection. And in his particular case, that contact appears to need to be sexual, at least some cases. There’s consistent evidence in the record of him offending against his — well, having forced sex against his paramours.”
He further concluded that Anthony N. “having forced sex against his paramours” was a sound basis to find a predisposition to act on a sexual urge.
In Richard TT, the State’s expert, Dr. Peterson, testified that it was the combination of BPD with respondent’s two other disorders, ASPD and psychopathy, that predisposed him to commit sex offenses and impacted his impulse control. The expert relied on what she considered to be the result of the combined impact of the three diagnoses, which individually were insufficient to establish respondent’s predisposition to commit sex offenses. However, there is no support for her “combination diagnosis” theory.
Thus, in order to connect BPD to uncontrollable sexual behavior that constitutes a sex offense, the experts in these cases relied on respondents’ past crimes. However, under article 10, a finding of mental abnormality cannot be based solely on evidence of the commission of past sex offenses (Mental Hygiene Law § 10.07 [d]). Article 10 “essentially envisions a battle of the experts to determine whether the respondent has a mental abnormality” (Floyd Y, 22 NY3d at 105-106 [internal quotation marks and citation omitted]), and because the basis of experts’ conclusions “inevitably involve devastating accusations,” convictions for sex crimes, as well as the concomitant victim-witness statements, “[j]uries may be predisposed to doubt the convicted sex offender and believe the State’s expert” (id.). It is not enough that an expert looks at a respondent’s crimes and then works backwards to explain the existence of a mental abnormality. This process easily lends itself to misdiag *757 noses, and increases the risk of overcommitment and a greater focus on public safety by incarceration than offender treatment and care through civil management (see Crane, 534 US at 412; Hendricks, 521 US at 372-373 [Kennedy, J., concurring]; Shannon S., 20 NY3d at 108-109).
In my opinion, respondents’ criminal records and the expert testimony presented in their cases were insufficient to establish they suffer from a mental abnormality as defined by article 10, and within the constitutional limits delineated by the United States Supreme Court. To be clear, respondents have committed horrendous acts, but the existence of a mental condition is necessary to distinguish them “from the dangerous but typical recidivist convicted in an ordinary criminal case” (Crane 534 US at 413), and to justify what may end up as permanent civil confinement.
In Matter of State of New York v Dennis K.: Order affirmed, without costs.
Opinion by Judge Pigott. Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein and Garcia concur, Judge Rivera in a separate concurring opinion. Judge Fahey taking no part.
In Matter of State of New York v Anthony N: Orders affirmed, without costs.
Opinion by Judge Pigott. Chief Judge DiFiore and Judges Abdus-Salaam, Stein and Garcia concur. Judge Rivera dissents in an opinion. Judge Fahey taking no part.
In Matter of State of New York v Richard TT.\ Order affirmed, without costs, and certified question answered in the negative.
Opinion by Judge Pigott. Chief Judge DiFiore and Judges Abdus-Salaam, Stein and Garcia concur. Judge Rivera dissents in an opinion. Judge Fahey taking no part.

 Of course a batterer could suffer from a mental abnormality as defined by article 10. However, the fact that a sex offender batters the offender’s partner, by itself, does not convert a criminal act into a predicate “condition, disease or disorder” for a mental abnormality, nor satisfy the statutory requirement that the offender has “serious difficulty in controlling” sex-offending conduct (Mental Hygiene Law § 10.03 [i]).