Matter of State of New York v Timothy R. (2018 NY Slip Op 08940)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Matter of State of New York v Timothy R.

2018 NY Slip Op 08940

Decided on December 26, 2018

Appellate Division, Second Department

Duffy, J., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 26, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department
REINALDO E. RIVERA, J.P.
CHERYL E. CHAMBERS
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2015-11309
(Index No. 988/13)

[*1]In the Matter of State of New York, respondent,
vTimothy R. (Anonymous), appellant.

APPEAL by Timothy R., in a proceeding pursuant to Mental Hygiene Law article 10 for the civil management of Timothy R., a sex offender whom the State of New York alleges requires civil management, from an order of the Supreme Court (Susan Cacace, J.), entered in Westchester County on September 25, 2015, which, upon a finding, made after a jury trial, that he suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03(i), and upon a determination, made after a dispositional hearing, that he is a dangerous sex offender requiring civil confinement, granted the petition and directed that he be committed to a secure treatment facility for care, treatment, and control until such time as he no longer requires confinement.

Mental Hygiene Legal Service, Mineola, NY (Michael D. Neville, Timothy M. Riselvato, and Dennis B. Feld of counsel), for appellant.
Barbara D. Underwood, Attorney General, New York, NY (Anisha S. Dasgupta and Philip V. Tisne of counsel), for respondent.

DUFFY, J.


OPINION & ORDER
At issue on this appeal is whether the Supreme Court's response, in this Mental Hygiene Law article 10 proceeding, to a note from the jury comports with the requirement that the State of New York prove by clear and convincing expert evidence that Timothy R. suffers from at least one diagnosis that meets the legal predicate for mental abnormality as that term is defined in the statute (see Mental Hygiene Law §§ 10.03[i]; 10.07[d]). Under the circumstances of this case, and for the reasons set forth below, we find that the court's response to the jury note did not comport with this requirement and, accordingly, reverse the order, set aside the finding of mental abnormality, and remit the matter to the Supreme Court, Westchester County, for a new trial on the issue of mental abnormality and, if necessary, a new dispositional hearing.Procedural Background
In 2011, Timothy R. was convicted, upon his plea of guilty, of sexual abuse in the first degree, based upon an incident in which he hid naked inside a women's bathroom in a Kentucky Fried Chicken restaurant and, when a woman entered, embraced the woman in a "bear hug" and rubbed his penis against her legs and buttocks. Timothy R. had been previously convicted, upon his pleas of guilty, of sexual abuse in the third degree and sexual abuse in the first degree, based on other incidents in which he assaulted women in public bathrooms.
In December 2013, as Timothy R. neared the end of the four-year sentence he was serving for the 2011 conviction, the State commenced this proceeding pursuant to Mental Hygiene Law article 10, also known as the Sex Offender Management and Treatment Act (hereinafter SOMTA), seeking civil management of Timothy R., alleging that he is a convicted sex offender who requires civil management (see Mental Hygiene Law § 10.06[a]). A jury trial was held, after which [*2]the jury found that Timothy R. suffers from a mental abnormality as that term is defined in SOMTA (see Mental Hygiene Law § 10.07; see also Mental Hygiene Law § 10.03[i]). Following a dispositional hearing, the Supreme Court determined that Timothy R. is a dangerous sex offender requiring civil confinement (see Mental Hygiene Law § 10.07[f]; see also Mental Hygiene Law § 10.03[e]), granted the petition, and directed that Timothy R. be committed to a secure treatment facility until such time as he no longer requires confinement.The Article 10 Trial
At trial, the State presented, among other things, the testimony of two psychologists, Dr. Trevor Floyd and Dr. Stuart Kirschner, both of whom were qualified as expert witnesses, and both of whom testified that Timothy R. suffered from a combination of a variety of diagnoses, including frotteuristic disorder, unspecified paraphilic disorder, mild neurocognitive disorder due to traumatic brain injury, and substance abuse disorders. Both of the State's experts opined that, as a result of his conditions, Timothy R. suffers from a mental abnormality as that term is defined in SOMTA. In opposition, Timothy R. presented evidence, including the testimony of a psychologist who was also qualified as an expert witness and who opined that Timothy R. suffers only from substance abuse disorders and does not have a mental abnormality as that term is defined in SOMTA.
In its charge to the jury, the Supreme Court instructed the jury, inter alia, that the State had the burden of proving, by clear and convincing evidence, that Timothy R. "now suffers from a mental abnormality in that he has a congenital or acquired condition that predisposes him to commit sex offenses and that his condition results in him having serious difficulty in controlling such conduct" (see Kansas v Hendricks, 521 US 346, 360; Addington v Texas, 441 US 418, 429; see also Matter of State of New York v Donald DD., 24 NY3d 174, 189; Matter of State of New York v Shannon S., 20 NY3d 99, 107-108). The court further charged that the jury "may accept so much of [an expert's] testimony as you deem true and disregard what you feel is false." Counsel for Timothy R. did not object to these instructions.
Thereafter, during deliberations, the jury sent a note to the Supreme Court that inquired, "Do we have to agree with one of the expert's diagnoses to find that he has a mental abnormality?" The court reviewed the note with counsel and asked for their input. Counsel for the State said the answer to the note should be "no," and counsel for Timothy R. said the answer should be "yes." After further colloquy between the court and counsel regarding the nature of the court's response to the note, over the objection of counsel for Timothy R., the court answered the question in the negative and reread a portion of its original charge that advised the jury that it was entitled to accept or reject any part of the experts' testimony. Neither during the colloquy between the court and counsel regarding the response to the note nor after the court informed counsel as to the specific language it would use to respond to the jury note did counsel for Timothy R. assert any basis for his exception to the response. Thereafter, the jury unanimously found that Timothy R. suffers from a mental abnormality.Interest of Justice
By objecting to the Supreme Court's response to the jury note and indicating that the answer to the jury's inquiry should be "yes," counsel for Timothy R. preserved for appellate review his contention that the court should have answered the note in the affirmative. However, his argument on appeal that the court's response to the note relieved the State of its burden of proof by allowing the jurors to divorce a finding of mental abnormality from science and to return a verdict based on their own lay opinions as to the mental health of Timothy R. was not raised at a time when this specific claimed error could have been corrected or avoided (see People v Keschner, 25 NY3d 704, 721-722; Matter of State of New York v Charada T., 23 NY3d 355, 362). Nonetheless, the court's response to the jury note implicates the fundamental right of Timothy R. to have the jury properly consider the central issue in the case, to wit, whether the State has proven, by clear and convincing evidence, that he suffers from a mental abnormality as that term is defined in the statute (see Mental Hygiene Law §§ 10.03[i]; 10.07[d]). Therefore, we reach these contentions on appeal in the interest of justice (see Vallone v Saratoga Hosp., 141 AD3d 886, 890; Peguero v 601 Realty Corp., 58 AD3d 556, 563-564; Ciarelli v Lynch, 22 AD3d 987, 989-990; Pivar v Graduate School of Figurative Art of N.Y. Academy of Art, 290 AD2d 212, 213).The State's Burden of Proof
In an article 10 proceeding, the jury is required to make a finding as to whether the respondent in such a proceeding suffers from a "mental abnormality," which is defined as "a [*3]congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03[i]). The State bears the burden of proving a mental abnormality by clear and convincing evidence and must present expert testimony to prove "a congenital or acquired condition, disease or disorder" (Mental Hygiene Law § 10.03[i]; see Kansas v Hendricks, 521 US at 360; Addington v Texas, 441 US at 429; Matter of State of New York v Donald DD., 24 NY3d at 190-191). Notably, not all diagnoses are sufficient predicates to support a finding of mental abnormality. For example, the Court of Appeals has determined that conditions such as antisocial personality disorder (hereinafter ASPD), which show "only a general tendency toward criminality," are insufficient predicates to establish mental abnormality as defined by the statute (Matter of State of New York v Donald DD., 24 NY3d at 191). Likewise, evidence of a predisposition to sexual misconduct not rising to the level of the felonies enumerated in article 10 as sex offenses (see Mental Hygiene Law § 10.03[p]) also would not be sufficient to prove mental abnormality (see Matter of State of New York v Adrien S., 114 AD3d 862, 863-864). Thus, to prove that an offender with ASPD has a mental abnormality, the State must proffer clear and convincing proof of another diagnosis that suggests a particular tendency to commit a sex offense as defined by the statute (see Matter of State of New York v Donald DD., 24 NY3d at 190-191; Matter of State of New York v Adrien S., 114 AD3d at 864).The Court's Response to the Jury Note
The jury note sent to the Supreme Court during deliberations indicates a certain level of confusion by the jury as to the evidence required to make a finding of mental abnormality (see Matter of State of New York v Adrien S., 114 AD3d at 864). The court's answer to the jury note was error because it failed to clarify that, although the jury is free to accept or reject all or part of the testimony of one or all of the experts, in order to find that Timothy R. suffers from a mental abnormality, the jury must conclude that at least one of the State's experts, individually or collectively, clearly and convincingly established that Timothy R. has a congenital or acquired condition, disease, or disorder that predisposes him to commit a sex offense as defined in the statute. Although the jury could reject some of the diagnoses that the State's experts testified to and still find that the State met its burden of demonstrating that Timothy R. has a mental abnormality, in order to do so, the jury had to accept so much of the testimony of at least one of the State's experts that pertained to at least one diagnosis that predisposed Timothy R. to commit a sex offense as that term is defined in the statute. For example, if the jury decided that only Dr. Floyd was credible and that the frotteuristic disorder diagnosis was improper, the jury would not be able to return a legally sufficient verdict of mental abnormality because none of the other diagnoses that Dr. Floyd ascribed to Timothy R. shows that Timothy R. has a particular tendency to commit a sex offense (see Matter of State of New York v Donald DD., 24 NY3d at 190-191). Likewise, if the jury decided that only Dr. Kirschner was credible but disagreed that Timothy R. has frotteuristic disorder or unspecified paraphilic disorder, the jury would not be able to conclude that Timothy R. has a mental abnormality.
Thus, contrary to the Supreme Court's response to the jury note, in order to conclude that Timothy R. has a mental abnormality, the jury was required to accept expert testimony as to at least one diagnosis that meets the legal predicate for mental abnormality. When the court answered the note in the negative and reiterated to the jury the general instruction as to accepting or rejecting all or some of an expert's testimony as it sees fit (see PJI 1:90), the jury could have been misled into relying solely upon its own lay opinion or so much of the expert testimony as relied upon nonpredicate diagnoses, without regard to the expert testimony, that Timothy R. has a congenital or acquired condition, disease, or disorder (see Matter of State of New York v Donald DD., 24 NY3d at 190-191; Matter of State of New York v Shannon S., 20 NY3d at 107-108; see also Matter of State of New York v Adrien S., 114 AD3d at 864). Such error requires reversing the order, setting aside the finding of mental abnormality, and remitting the matter for a new trial on the issue and, if necessary, a new dispositional hearing.
The Supreme Court did not err in permitting the State's experts to testify regarding statements Timothy R. made when he participated in a sex offender treatment program in prison (see Matter of State of New York v Justin D., 145 AD3d 735, 736).
In light of our determination, we need not address Timothy R.'s remaining contentions.
Accordingly, the order is reversed, on the law and in the exercise of discretion, the [*4]finding of mental abnormality is set aside, and the matter is remitted to the Supreme Court, Westchester County, for a new trial on the issue of abnormality and, if necessary, a new dispositional hearing.
CHAMBERS and BARROS, JJ., concur.
ORDERED that the order is reversed, on the law and in the exercise of discretion, without costs or disbursements, the finding of mental abnormality is set aside, and the matter is remitted to the Supreme Court, Westchester County, for a new trial on the issue of abnormality and, if necessary, a new dispositional hearing.
RIVERA, J.P., dissents, and votes to affirm the order, with the following memorandum:
I respectfully disagree with my colleagues' determination that reversal is warranted based on the Supreme Court's response to a jury note. Accordingly, I would affirm the order.
The appellant has a long history of sexually assaulting women in public bathrooms. In 2011, he was convicted of sexual abuse in the first degree and sentenced to a determinate term of imprisonment of 4 years to be followed by 10 years of postrelease supervision. As the date of his release from imprisonment approached, the State of New York commenced this proceeding under article 10 of the Mental Hygiene Law, alleging that the appellant is a sex offender requiring civil management.
In 2015, the Supreme Court conducted a jury trial on the issue of whether the appellant suffered from a mental abnormality (see Mental Hygiene Law § 10.03[i]). Among other evidence, the State presented testimony from two experts, Dr. Trevor Floyd and Dr. Stuart Kirschner, both of whom opined that the appellant suffers from a mental abnormality. Specifically, they diagnosed the appellant with frotteuristic disorder, mild neurocognitive disorder, and several substance abuse disorders. In addition, Dr. Kirschner also diagnosed the appellant with unspecified paraphilic disorder and two personality disorders. In contrast, the appellant presented the evidence of his expert, Dr. Leonard Bard, who opined that the appellant does not suffer from a mental abnormality. Essentially, Dr. Bard disagreed with all of the diagnoses presented by the State's experts, with the exception of the diagnoses of substance abuse disorders.
The Supreme Court provided the jury with an extensive charge, which included an instruction that "[t]he Attorney General must prove by clear and convincing evidence that [the appellant] now suffers from a mental abnormality in that he has a congenital or acquired condition that predisposes him to commit sex offenses and that his condition results in him having serious difficulty in controlling such conduct." The court also instructed the jurors that they "may accept so much of [an expert's] testimony as [they] deem true and disregard what [they] feel is false." There were no objections registered to the court's charge.
During deliberations, the Supreme Court received a note from the jury asking: "Do we have to agree with one of the expert's diagnoses to find that he has a mental abnormality?" Outside the presence of the jury, the court and counsel engaged in a discussion on how to respond thereto. The State's counsel stated, "My position is no." The appellant's counsel countered, "Our position would be yes. They pleaded that he had such diagnosis and that lead [sic] to a mental abnormality." The court replied, "It is not an element of the crime though and they have already been given the instruction that they can accept or reject any or all portion of any witness's testimony. So my inclination is no." The appellant's counsel interjected, "We'll take exception to the ruling."
The Supreme Court continued, "I can tell them no or I can tell them no with an explanation. It is probably just better off saying no. Any input?" The State's counsel proposed, "We can go look at your charge. I don't think there needs to be anything else, anything said other than no, they don't have to." The appellant's counsel then inquired, "If you were to give an explanation, what would that be?" The court answered, "Basically what I just indicated. They are permitted to accept as much as or reject any portion of any witness's testimony that would include the experts." Notably, the appellant's counsel stated, "I think that would be the better way of handling it," and agreed to withdraw his prior exception.
The State's counsel, however, indicated, "My preference would be a simple answer directly answering their question no.'" The Supreme Court advised counsel:
"I am just going to reread from my charge the following:
"You may reject an expert's opinion if you find the facts to be different from those which form the basis for . . . the opinion.
"You may also reject the opinion if after a carefully [sic] consideration of all the evidence in the case, expert and other you disagree with [the] opinions.
"In other words, you are not required to accept the expert's opinion to the exclusion of the facts and circumstances disclosed by other testimony."
Upon the court's inquiry if this response to the jury note would be "acceptable" to both sides, the State's counsel proposed that the court "read that whole paragraph" and start by saying, "The opinions were based upon particular facts." The appellant's counsel stated, "Well, we would, if that's the case, we would say, we would then prefer to just go and preserve our exception." The court then reviewed the "original charges" as given to the jury and, consistent therewith, advised counsel that it would "do that along with the no," adding, "You have an exception."
The Supreme Court then addressed the jury by reading aloud the note at issue, "Do we have to agree with one of [the] expert's diagnoses to find that he has a mental abnormality?" and stating, "The answer to that is no." The court proceeded to reread a portion of the charge it had originally given to the jury. Specifically, the court instructed:
"The opinions stated by each expert who testified before you were based upon particular facts as the expert[ ]s obtained knowledge of them and testified to them before you or as the attorneys who questioned the expert asked the expert to assume.
"You may reject an expert's opinion if you find the facts to be different from those which form the basis for the opinion.
"You may also reject the opinion if after careful consideration of all of the evidence in the case, expert and other, you disagree with the opinion.
"In other words, you are not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other testimony.
"Such an opinion is subject to the same rules concerning reliability as the testimony of any other witness. It is given to assist you in reaching a proper conclusion.
"It is entitled to such weight as you find the expert's qualifications in the field warrant and must be considered by you but is not controlling upon your judgment."
Upon further deliberations, the jury unanimously found that the appellant suffered from a mental abnormality.
On appeal, the appellant argues that the Supreme Court's response to the jury note constituted "reversible error" and denied him "due process" and a "fair trial." As correctly found by the majority, the appellant never argued before the court the contentions now espoused on appeal. Thus, these issues are unpreserved for appellate review. Further, with the exception of a proposed response of "yes," the appellant did not suggest any additional or specific language for the court to consider in response to the jury's note. Had the appellant's counsel appropriately done so, the court could have addressed the appellant's concerns and developed a record to facilitate appellate review of the issues raised (see Martinez v Te, 75 AD3d 1, 5; Maione v Pindyck, 32 AD3d 827, 829).
It is disingenuous and irresponsible for the appellant to now impute reversible error to the Supreme Court, when he wholeheartedly agreed with the original charge as given and was even willing to initially withdraw his exception to the court's response to the jury note. Further, I disagree with my colleagues' determination to reach the issue in the interest of justice on the ground that the court's response to the jury note "implicates the fundamental right of [the appellant] to have the jury properly consider the central issue in the case, to wit, whether the State has proven, by clear and convincing evidence, that he suffers from a mental abnormality" (majority op at 4). Instead, I would decline to review this unpreserved issue.
In any event, on the merits, I find that the Supreme Court's charge was not error, and certainly would not rise to the level of reversible error (cf. CPLR 2002; Parris v New York City Tr. Auth., 140 AD3d 938, 940; Simone v McNamara, 59 AD3d 349).
First, I do not concur with my colleagues' finding that the note indicated a certain level of confusion by the jury as to the evidence required to make a finding of mental abnormality. The subject jury note was inartfully drafted. However, on its face, it does not reflect any confusion. The jury appropriately sought clarification. This is indicative of the jurors' level of commitment and their recognition of the seriousness with which they undertook their role as factfinders.
Second, as indicated above, the jury's question was: "Do we have to agree with one of the expert's diagnoses to find that he has a mental abnormality?" If the Supreme Court had ceded and replied to the jury note with "yes," as advanced by the appellant, this response would have invariably resulted in error, been legally incorrect, and constituted a basis for reversal.
Mental Hygiene Law § 10.03(i) defines "mental abnormality" as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct." In the past several years, the Court of Appeals has had multiple occasions to pass upon and consider the issue of what constitutes legally sufficient evidence of a "mental abnormality" in the context of proceedings pursuant to Mental Hygiene Law article 10 for the civil management of sex offenders.
In Matter of State of New York v Shannon S. (20 NY3d 99), the Court of Appeals rejected the contention that, to qualify as a mental abnormality under the Mental Hygiene Law, a diagnosis of a mental disease or disorder must be listed in the Diagnostic and Statistical Manual of Mental Disorders (hereinafter the DSM), recognizing that section 10.03(i) "does not reference or require that a diagnosis be limited to mental disorders enumerated within the DSM" (Matter of State of New York v Shannon S., 20 NY3d at 106). In Shannon S., the Court of Appeals also found that a diagnosis of paraphilia not otherwise specified (hereinafter paraphilia NOS) is "a viable predicate mental disorder or defect that comports with minimal due process" such that any issue pertaining to its reliability as a predicate condition is "a factor relevant to the weight to be attributed to the diagnosis, an issue properly reserved for resolution by the factfinder" (id. at 107).
Subsequently, in Matter of State of New York v Donald DD. (24 NY3d 174, 177), the Court of Appeals held that evidence that a sex offender suffers from antisocial personality disorder (hereinafter ASPD) cannot be used to support a finding that he or she has a mental abnormality "when it is not accompanied by any other diagnosis of mental abnormality." The Court clarified that a diagnosis that "proves no sexual abnormality . . . cannot be the sole diagnosis that grounds [a finding of mental abnormality as defined by Mental Hygiene Law article 10]" (id. at 190).
In Matter of State of New York v Dennis K. (27 NY3d 718), the Court of Appeals distinguished Donald DD., holding that the sex offenders at issue in Dennis K. and the companion cases to Dennis K. had been diagnosed with conditions, diseases, and/or disorders in addition to ASPD.
Recently, in Matter of State of New York v Floyd Y. (30 NY3d 963), the Court of Appeals concluded that the evidence presented was legally sufficient to establish by clear and convincing evidence that the appellant therein had "serious difficulty in controlling" his sexual conduct with the meaning of Mental Hygiene Law § 10.03(i). The State's expert witness testified, among other things, that he diagnosed the appellant with pedophilia and ASPD, as well as substance abuse disorders.
In the case at bar, the parties' experts had differing opinions, and each expert presented his diagnosis/diagnoses. Based upon the holdings of the Court of Appeals discussed above, several of the diagnoses proffered (either individually or in tandem with others) would be sufficient to prove mental abnormality within the meaning of Mental Hygiene Law § 10.03(i). For [*5]example, the fifth edition of the DSM lists certain specifically named paraphilias, including frotteuristic disorder, one of the diagnoses of which the State's experts agreed the appellant suffered. A diagnosis such as substance abuse disorder, standing alone and without a link to the appellant's predisposition to commit conduct constituting a sex offense, would not suffice. A response in the affirmative by the Supreme Court to the jury note would have instructed the jury that if they "agree[d]" with "one" of the diagnoses posited by any expert, including a diagnosis that did not constitute a sufficient predicate to a finding of mental abnormality, they could then find a mental abnormality. That would have been catastrophic, in sharp conflict with settled law, and error.
Moreover, in responding to the jury note, it would have been ill-advised for the Supreme Court to have engaged in any marshaling of the evidence. An attempt to tailor a response, such as referencing some diagnoses and not others, could have been potentially misleading, suggestive of an outcome, and/or prejudicial to one party. As a general matter, "tailoring jury instructions to ensure that the case is submitted to the jury in a full and fair manner is a quintessential task of the trial court" (United States v McKnight, 665 F3d 786, 792 [7th Cir]). Significantly, "[i]t is, of course, the role of the jury to determine the facts of the case tried before it" (People v Inoa, 25 NY3d 466, 472). In this case, which essentially boiled down to a battle of the experts, the court took a correct and prudent course in responding to the note and in reminding the jury, as originally instructed, that they could accept or reject an expert's opinion or any part thereof. Indeed, when the court had originally charged the jury in that regard, the appellant found that charge to be completely acceptable and appropriate.
In sum, I find no reason to reverse on this point, nor do I find any of the appellant's remaining contentions to have merit.
ENTER:
Aprilanne Agostino
Clerk of the Court