OPINION OF THE COURT
Denise A. Hartman, J.
In this Mental Hygiene Law article 10 civil management proceeding, respondent David D. moves to preclude evidence of a diagnosis of other specified paraphilic disorder (OSPD) hebe-philia. The court granted respondent’s request for a Frye hearing on the admissibility at trial of evidence of the specifying diagnosis of hebephilia (see Frye v United States, 293 F 1013 [DC Cir 1923]). After considering the testimony and evidence received during the three-day Frye hearing, the court concludes that OSPD hebephilia is not generally accepted as a reliable diagnosis in the relevant psychiatric community.
Background
Petitioner, the State of New York, commenced this proceeding by petition filed July 31, 2015. The petition alleges, among other things, that respondent is a sex offender requiring civil management. Supporting the petition is the psychological report of Dr. Jennine Martinez, an Office of Mental Health employee who evaluated respondent pursuant to Mental Hygiene Law § 10.05 (e), (g). In Dr. Martinez’s opinion, respondent has a mental abnormality within the meaning of Mental Hygiene Law § 10.03 (i). She diagnosed respondent as having other specified paraphilic disorder, hebephilia, as well as antisocial personality disorder, psychopathy, and multiple substance-abuse-related disorders. She based her diagnosis of hebephilia on respondent’s “described . . . sexual preference for pubescent females between the ages of 11-14 years old,” and *1043 his acting on that preference “multiple times over a 10-year period, despite arrests and criminal sanctions.”[1]
Respondent maintains that “an attraction to pubescent females is considered normative behavior and pathologizing this attraction is not generally accepted in the relevant psychological community.” The court heard three expert witnesses over three days of hearings: Dr. David Thornton and Dr. Christopher Kunkle for the State, and Dr. Barry Rosenfeld for respondent. The court also received into evidence numerous professional articles and texts.
Evidence at the Frye Hearing
Central to all three experts’ testimony was the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), published in 2013, which the experts agree represents the institutional consensus of American psychiatry. Among other mental disorders, the DSM-5 classifies and describes paraphilic disorders. The DSM-5 defines the word “paraphilia” as “any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners” (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 685 [5th ed 2013]). While generally the intensity and persistence of the sexual interests are the focus of the inquiry, some paraphilias are better described as “preferential sexual interests” (DSM-5 at 685).
A paraphilia describes a sexual interest and is a “necessary but not a sufficient” predicate for a paraphilic disorder diagnosis (id. at 686). “A paraphilic disorder is a paraphilia that is currently causing distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others” (id. at 685-686). The DSM-5 lists and assigns diagnostic criteria to eight paraphilic disorders: voyeuristic disorder, exhibitionistic disorder, frot-teuristic disorder, sexual masochism disorder, sexual sadism disorder, pedophilic disorder, fetishistic disorder and transvestic disorder (id. at 685). The DSM-5 explains that “[t]hese disorders have traditionally been selected for specific listing” because “they are relatively common, in relation to other [para- *1044 philias]” or are criminal offenses when acted upon “because of their noxiousness or potential harm to others” (id.). The list is not exhaustive and “[m]any dozens of distinct paraphilias have been identified and named, and almost any of them could, by virtue of its negative consequences for the individual or for others, rise to the level of a paraphilic disorder” (id.).
The DSM-5 states that the diagnoses of other specified para-philic disorder and unspecified paraphilic disorder (UPDs) “are therefore indispensable and will be required in many cases” (id.). The OSPD and UPD categories “applfy] to presentations in which symptoms characteristic of a paraphilic disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the” listed paraphilic disorders (id. at 705). The DSM-5 gives six non-exclusive examples of OSPD specifiers: sexual attraction to obscene phone calls, corpses, animals, feces, enemas and urine (id.). The other specified and unspecified diagnostic categories are used throughout the DSM, not only in the paraphilic disorder section.[2]
The DSM-5 lists as one of the eight defined disorders “pedophilic disorder” (id. at 697). Pedophilia is defined as “recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger),” where the subject is at least 16 years old and “at least five years older than the child or children” (id.). The DSM-5 does not include hebephilia among the eight defined disorders, nor among the six illustrative OSPD specifiers.
The Proposal for “Pedohebephilia” in the DSM-5
Dr. Thornton, who has a Ph.D. in psychology, is currently the director of research at the Sand Ridge Secure Treatment Center in Wisconsin. Formerly, from 2001 to 2013, he was the director of treatment at the Sand Ridge facility. He had received his training and early professional experience in England’s prison system. In his view, the specifier hebephilia is generally accepted as reliable by many professionals in the field.
*1045 A proposal to revise the diagnosis of pedophilia and to include hebephilia as a subset of “pedohebephilia” was rejected when the DSM-5 was adopted in 2013. Dr. Thornton testified that he was involved in providing research regarding the proposed new diagnosis of “pedohebephilia,” which would encompass both pedophilia and hebephilia, when it was proposed for inclusion in the DSM-5. Inclusion of a new paraphilic disorder in the DSM-5 required three levels of review. The first was by a “sub-work group” on paraphilic disorders chaired by Dr. Raymond Blanchard. Second, the disorder had to be approved by the “work group” on sexual and gender identity disorders, chaired by Dr. Kenneth Zucker. Finally, it had to be approved by the Board of Trustees of the American Psychiatric Association (the APA). The subwork group and work group recommended inclusion of the newly defined diagnosis in the DSM-5, but the APA ultimately rejected it.
Dr. Thornton testified that it is his view that hebephilia fits within the DSM-5’s definition of paraphilia as an intense and persistent sexual interest “other than sexual interest ... in phenotypically normal, physically mature, consenting human partners.”[3] Pedophilia, for example, involves an intense and persistent sexual interest in prepubescent children, as opposed to physically mature, consenting partners, with the age descriptor of “generally age 13 or younger” being merely a guideline. Likewise, in his view, a diagnosis of hebephilia should be based on an intense and persistent preferential sexual interest in physically immature pubescent children, again with the age descriptor of “generally between the ages of 11 and 14” being a mere guideline. He testified that for pedophilia, prepubescence corresponds to Tanner stage I of the common system that medical doctors use to classify sexual maturity, while for hebephilia, pubescence corresponds to Tanner stages II and III. (Tanner stage IV is associated with nearly mature teens, and Tanner stage V is associated with mature adults.) Under the proposed diagnosis, an individual having a sexual preference for both prepubescent and pubescent children would be diagnosed with pedohebephilia.
*1046 Dr. Thornton testified that the diagnosis proposed for the DSM-5 would be more consistent with the International Classification of Diseases, tenth edition (ICD-10), published by the World Health Organization, which defines pedophilia as a sexual preference for children of prepubertal age, corresponding to Tanner stage I, and “early pubertal” age, corresponding “at least to Tanner stage II and probably to Tanner stage III as well.”
Dr. Thornton described the results of various studies to support his view that OSPD hebephilia is a valid and reliable diagnosis. He described penile plethysmograph (PPG) studies by Dr. Blanchard, a researcher affiliated with the Toronto Center for Addiction and Mental Health (CAMH) and chair of the DSM-5 subwork group, showing that most heterosexual men have arousal patterns showing a greater attraction to mature females and a lesser attraction to pubescent females. The studies show that the arousal patterns for some men demonstrate a distinct preference for pubescent females over mature females.[4] It is this arousal pattern, according to Dr. Thornton, that characterizes hebephilia.[5]
Dr. Thornton also testified about the field studies that he and others did for the DSM-5 subwork group concerning hebe-philia, including his research at Sand Ridge, another study done of inpatient sex offenders at the Florida Civil Commitment Center under Dr. Robin Wilson, and a study of outpatient sex offenders in California. The studies revealed that the proposed new definition would not have greatly increased the number of individuals diagnosed with a paraphilia. Dr. Thornton thought that this may be because in clinical practice hebe-philes have often been diagnosed as pedophiles using the age range of the victims as 13 or younger, instead of strictly using the Tanner stage I criterion. The field studies also revealed a “moderate degree” of inter-rater reliability when clinicians used the criteria in the DSM-5 proposal. Dr. Thornton testified that the diagnosis of OSPD hebephilia should be based on a *1047 review of clinical files and history, self-reporting and structured interviews, and, when available, PPG results.
Dr. Thornton also identified a number of professionals who accept and advocate for the diagnosis of hebephilia. He pointed to published articles by Dr. Blanchard and others who advocated for the adoption of pedohebephilia diagnosis in the DSM-5, by Drs. Cantor and Seto who also research and treat paraphilic disorders in Canada, and by Dr. Beier who conducted a study known as the Dunkelfeld project in Germany involving self-reporting individuals who were not involved in the criminal justice system.[6]
To support its position that the diagnosis is generally accepted, the State introduced a copy of a chapter of a textbook published in 2016, entitled “Sexual Offending.” In the chapter entitled Hebephilic Sexual Offending, authors Dr. Skye Stephens and Dr. Michael C. Seto define the term hebephilia consistently with the DSM-5 proposal. They note that unlike pedophilia, hebephilia “has not been widely accepted,”[7] (Amy Phenix & Harry M. Hoberman, Sexual Offending: Predisposing Antecedents, Assessments and Management, Hebephilic Sexual Offending at 31 [2016]) and go on to discuss the debate over its validity. The authors conclude that “research suggests that he-bephilia is a valid psychological construct, representing a distinct sexual interest in pubescent children” (citing Blanchard), and that if pedophilia is included in the DSM and ICD-10, “then hebephilia should be included as well” (Sexual Offending at 40). The authors also state that further research should be done to determine how common hebephilic interest is in the general population and on how to distinguish hebe-philia from pedophilia and other sexual offenders using a more precise definition and assessment of hebephilia (id. at 40-41).
The Diagnosis of Hebephilia in New York’s Sex Offender Program
Also for the State, Dr. Christopher Kunkle, Director and Chief Psychiatric Examiner for the State’s sex offender treatment program, testified that in his view, OSPD hebephilia is *1048 generally accepted as a reliable diagnosis, at least among professionals who regularly work with individuals who have paraphilic disorders. Like Dr. Thornton, he finds it significant that the DSM-5 redefined paraphilia as intense, persistent or preferential interests in sexual activity with other than physically mature, consenting partners, instead of as the DSM-IV had previously defined it in part as a sexual interest involving “children.” He also finds support for the diagnosis in Dr. Blanchard’s studies, as well as in the other studies described in the various articles and texts submitted by the State.
Dr. Kunkle testified that the New York State Office of Mental Health uses the term “Paraphilia/Hebephilia” as a diagnostic label and that he trains his evaluators to test for and treat he-bephilia. He admitted that his evaluators must often use victims’ ages because specific information about their Tanner stage maturity is not available in most cases. He surveyed the diagnoses of the 713 individuals referred to the Office of Mental Health for article 10 review between January 2010 and January 2016. Of those, 394 had victims between the ages of 13 and 17. Of those, 32 were diagnosed with hebephilia. All 32 had at least one victim age 14 or younger; 28 had at least one victim age 13 or younger; 26 had at least one victim age 12 or younger; 14 had at least one victim age 11 or younger; and 11 had at least one victim younger than age 11. He believed the diagnosis of hebephilia in this sample would overlap with the diagnosis of pedophilia under the ICD-10, which provides an age guideline of under 13. Dr. Kunkle stated that he himself has diagnosed about five or more individuals with hebephilia based on their victim profiles and self-reports during interviews with patients.
Respondent’s Evidence
Testifying for respondent was Dr. Barry Rosenfeld, Ph.D., a clinical psychologist, forensic psychologist, and professor of psychology and law, and chair of the psychology department at Fordham University. In his view, hebephilia has not been sufficiently researched, is a hotly contested diagnosis, and is not generally accepted as a reliable diagnosis in the psychiatric community, as reflected by the APA’s rejection of it in the DSM-5. His concerns about the validity of the diagnosis are manifold. First, he expressed his concern about designating a normophilic sexual interest as a pathology based on a social construct. He testified that even in our culture heterosexual men are attracted to pubescent teens, and that the lines *1049 demarcating the condition are “blurry.” In his view, the ICD-10’s reference to early pubescence refers only to Tanner stage II, and defining hebephilia to encompass individuals who have a sexual preference for girls in Tanner stages II and III (generally ages 11 to 14) creates an unacceptably high potential for misapplication, especially where the literature shows that most girls today have matured beyond Tanner stages II and III by the age of 12.
Dr. Rosenfeld also believes that considering an attraction to pubescent girls deviant is inconsistent with cross-cultural an-thropologic and evolutionary perspectives. He expressed concern that in many cultures, the age of consent is 14; and in many others, girls as young as 14 are often married. He agreed that some of the opposition to the proposed hebephilia diagnosis may have been driven by policy, rather than science. And he conceded that an individual who has a preferential sexual attraction to children in Tanner stage II would be diagnosable as a pedophile under the ICD-10, but not as a pedophile under the DSM-5 definition of pedophile.
Respondent offered numerous articles criticizing the proposed diagnosis of hebephilia as basis for finding a mental disorder. In these articles, the authors expressed concern about whether attraction to adolescents is deviant or normative, whether the diagnosis is reliable, and whether it is a diagnosis that is being urged merely to provide another predicate for civil confinement. The articles submitted by respondent include an article by Dr. Karen Franklin, a leading voice critical of the proposed diagnosis, about the controversy over the “emergence of the novel label hebephilia in the forensic context.”[8] In it she described the historical use of the term hebephilia beginning in the 1950s through the 1980s, and argues that the DSM-5 should not legitimize the diagnosis based on the more recent limited research of Dr. Blanchard and others affiliated with Toronto’s sex offender program. Echoing these concerns, other academics, clinicians, and researchers have argued against the “premature” inclusion of the proposed diagnosis of hebephilia in the DSM-5, given the limited research that has been done, the unreliability of the diagnosis, and its potential for misuse *1050 in the forensic context.[9] Others, such as Bruce Rind and Richard Yuill, conducted an extensive review of historical, sociological, and evolutionary evidence and concluded that “he-bephilic interest is an evolved capacity and hebephilic preference an expectable distributional variant” which, while resulting in a “mismatch with modern society,” is not a “genuine disorder.”[10]
Legal Analysis
To be admissible at a trial, scientific evidence must be generally accepted as reliable by the relevant scientific community (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d 762, 781 [2014], citing People v Wesley, 83 NY2d 417, 422 [1994]). Acceptance need not be universal; the existence of controversy does not preclude general acceptance (see Cornell, 22 NY3d at 781). But the psychiatric principle must be “sufficiently established to have gained general acceptance in the particular field in which it belongs” (People v Wesley, 83 NY2d at 423). General acceptance can be established by judicial notice, reference to judicial opinions, through expert testimony at a Frye hearing, or by established “texts and scholarly articles” (see People v Wernick, 215 AD2d 50, 52 [2d Dept 1995], affd 89 NY2d 111 [1996]). The focus of the Frye test is on “counting scientists’ votes, rather than on verifying the soundness of a scientific conclusion” (People v Wesley, 83 NY2d at 439 [Kaye, Ch. J., concurring]). The burden of proving general acceptance is on the proponent of the disputed testimony, in this case the State (see Zito v Zabarsky, 28 AD3d 42, 44 [2d Dept 2006]).
The Court of Appeals has addressed the diagnosis of hebephilia in Mental Hygiene Law article 10 proceedings, but never *1051 in a case where a Frye hearing had been held. In Matter of State of New York v Shannon S., the Court found evidence legally sufficient to sustain a mental abnormality finding where the respondent was diagnosed with paraphilia not otherwise specified (NOS), hebephilia under the former DSM-IV-TR (20 NY3d 99, 107-108 [2012], cert denied 568 US —, 133 S Ct 1500 [2013]). The four-member majority found the hebephilia diagnosis valid, holding that respondent’s “sexual offenses against adolescent victims demonstrated an attraction to non-consenting minors that satisfied the plain definition of paraphilia NOS and evinced symptoms of hebephilia” (id. at 107-108). Three Judges dissented, however, describing the “he-bephilia” diagnosis as “junk science devised for the purpose of locking up dangerous criminals” and expressed “grave doubt” the diagnosis would survive a Frye hearing (id. at 110 [Smith, J., dissenting]).
Two years later, Matter of State of New York v Kenneth T. analyzed a similar diagnosis of paraphilia NOS, based on offenses against nonconsenting postpubescent victims (24 NY3d 174 [2014]). This time, the majority of the Court expressed skepticism about the validity of the paraphilia NOS diagnosis, quoting the language from Shannon S. that called paraphilia NOS, hebephilia “junk science,” and expressed “grave doubt” whether such a “diagnosis would survive a Frye hearing” (24 NY3d at 186, quoting Shannon S., 20 NY3d at 110 [Smith, J., dissenting]). The Court acknowledged that it had upheld the paraphilia NOS, hebephilia diagnosis in Shannon S., upon finding that issues concerning the legitimacy of that diagnosis went to weight, not admissibility. As in Shannon S., the Court ultimately concluded that the diagnosis of NOS nonconsent was sufficient to support a finding of mental abnormality. But it added,
“[w]e did not . . . decide in Shannon S. the question . . . whether the diagnosis of paraphilia NOS, as testified to by the State’s experts, has received general acceptance in the psychiatric community. Nor do we decide that question today, because here, as in Shannon S., no Frye hearing was requested or held” (id. at 187).
Since Shannon S. and Kenneth T. were decided, several New York trial courts have addressed requests for Frye hearings to consider whether OSPD hebephilia is a diagnosis that is generally accepted as reliable in the psychiatric community. In two *1052 cases, the courts allowed testimony of the diagnosis of OSPD hebephilia, and in two others, the courts rejected testimony about the diagnosis.
In Matter of State of New York v Paul V. (Sup Ct, Erie County, May 26, 2016, Michalski, J., index No. MH45118-2013), the court had before it the prior testimony of Dr. Thornton and Dr. Kunkle as well as the live testimony of Dr. Robin Wilson, who was involved in the Florida field trials for the DSM-5 subwork group, as well as much of the documentary evidence the State submitted in this case (articles by Dr. Blanchard, Dr. Cantor, and Dr. Beier). Respondent introduced prior testimony of clinical psychologists Dr. Karen Franklin and Dr. Cynthia Calkins and psychiatrist Dr. Allen Frances, and the live testimony of Dr. John Bradford, who was a member of the DSM-5 sexual disorders work group, as well as a number of peer-reviewed articles critical of the diagnosis. The court concluded that “[h]e-bephilia is a diagnosis generally accepted in the relevant scientific community,” which it found to be the DSM-5 para-philia subwork group, and as under different terminology in the ICD-10 (Paul V., slip op at 4). In Matter of State of New York v Korey M. (Sup Ct, Fulton County, June 15, 2016, Hoye, J., index No. 2013-0110), the court held that respondent failed to make a prima facie showing that testimony about a diagnosis of OSPD hebephilia rests on a novel theory that is not generally accepted in the relevant scientific community, and that even if it had, hebephilia “has been found to be generally accepted in the scientific community” (Korey M., slip op at 5, citing Paul V.; People v LeGrand, 8 NY3d 449, 458 [2007] [holding that a court may rely on another court’s decision after a Frye hearing and need not conduct another one]).
On the other hand, the court in Matter of State of New York v Hugh H. (Sup Ct, Suffolk County, July 20, 2016, Pitts, J., index No. 14158/15) found that the diagnosis of OSPD hebephilia has not achieved general acceptance in the relevant scientific community. The court had before it the live or prior testimony of Dr. Robin Wilson, Dr. Joseph Scroppo, Dr. Allen Frances, Dr.' Cynthia Calkins, and Dr. Karen Franklin, as well as documentary evidence. The court based its conclusion on its finding on the lack of consensus about the age parameters for the diagnosis, the rejection of the diagnosis in the DSM-5, the fact that the main supporters of the diagnosis of hebephilia are researchers and clinicians affiliated with the CAMH in Toronto, and its determination that the vast majority of articles taking *1053 a position on the diagnosis are against the diagnosis (Hugh H., slip op at 2-3).
In the most extensive discussion of the subject, Matter of State of New York v Ralph P. (53 Misc 3d 496 [Sup Ct, NY County 2016, Conviser, J.]), the court likewise concluded that the diagnosis of OSPD hebephilia is not generally accepted in the relevant scientific community. The court heard the testimony of Dr. Thornton, Dr. Kunkle, and Dr. Wilson for the State, and Dr. Franklin, Dr. Calkins, and Dr. Charles Ewing, a professor and forensic psychologist at Buffalo Law School, for respondent, and received into evidence many of the same articles and texts produced in this case. The court concluded that while the broader category of diagnoses, “OSPD,” is generally accepted, the specifier hebephilia is not (id. at 550-551). The court did not regard the APA’s rejection alone as determinative of the question of general acceptance, but it found that the evidence established that the majority of clinicians and researchers who work in the “sex offender psychiatric community” oppose the DSM-5 proposal (id. at 553); that the diagnosis has not been used “with anything approaching uniform criteria” (id.); and that the diagnosis is “relevant outside the research context today only . . . as a tool to commit sex offenders . . . under SVP programs,” a tool that “in practice has worked very poorly” (id. at 554).
This Court’s Conclusions
This court concludes that the specifier hebephilia is not generally accepted as reliable in the relevant psychiatric community. The court agrees with the Ralph P. court’s view that neither the APA as a whole, nor the subwork group that proposed the diagnosis for the DSM-5 constitutes the relevant scientific community. The relevant scientific community includes psychiatrists and mental health professionals who research paraphilias or who work with individuals who have paraphilias. This includes not only researchers and clinicians who work with convicted sex offenders in the United States and Canada, but also others who research or work with individuals who are not involved with the criminal justice system, for example those who used the definition and criteria proposed by the DSM-5 subwork group in their work with individuals who self-identified as having an attraction to pubescent children and who sought treatment in the Dunkelfeld project in Germany. These are the mental health professionals who would have direct familiarity with the diagnosis, its scientific underpinnings, and its reliability.
*1054 Consequently, the court does not find the APA’s rejection of the proposed diagnosis in the DSM-5, standing alone, to be determinative. It is difficult to sort out whether the APA Board’s rejection of the proposal to include hebephilia was due to a “firestorm” (Ralph P. at 552) of opposition based on science or on extra-scientific disagreement with civil confinement for sex offenders, or on other policy concerns. The reasons for the APA Board’s rejection are cloaked in secrecy, and the basis for the rejection cannot be discerned.
The court also acknowledges the State’s experts’ view that OSPD hebephilia theoretically fits within the DSM-5’s new definition of a paraphilia as “any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners,” (DSM-5 at 685) and within the DSM-5’s definition of a paraphilic disorder when it “is currently causing distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others” (id.). In fact, recognizing the challenged diagnosis within the construct of the new DSM-5 definitions could mitigate some of the concerns about pathologizing a relatively common sexual attraction among adults in pubescent children, because it would not be considered a disorder unless it causes impairment or harm in this society.
Nevertheless the court finds that, as a matter of head-counting, the relevant scientific community has not generally accepted the diagnosis of hebephilia as defined and proffered by the State in this case. It is true that Dr. Blanchard and his colleagues in Toronto, Dr. Thornton and his colleagues at Wisconsin’s Sand Ridge facility, and Dr. Kunkle and his colleagues in the New York sex offender treatment program accept and use the diagnosis in their work. But even the proponents of the diagnosis recognize that the diagnosis has received limited acceptance and urge further research. For example, Dr. Stephens and Dr. Seto, who are affiliated with the Toronto group and who support the diagnosis of hebephilia in their textbook chapter, Hebephilic Sexual Offending, have observed that while “[p]edophilia is generally accepted as a paraphilia and mental disorder,” hebephilia “has not been widely accepted” (Sexual Offending at 31). Even Dr. Blanchard in his 2009 article, Pedophilia, Hebephilia and the DSM-5, acknowledged that the term hebephiles “has not come into widespread use, even among professionals who work with sex *1055 offenders” (38 Arch Sex Behav 335, 336 [2009]). The large number of opponents of the diagnosis is apparent from the articles received into evidence in this case. That opponents of the diagnosis comprise a substantial majority of the relevant community is confirmed by the description in Ralph P. and Hugh H. of the testimony given by Dr. Karen Franklin regarding her “literature review.”[11]
A review of the documents received into evidence in this case shows that much of the opposition to the challenged diagnosis within the relevant scientific community arises from interrelated concerns about the definitional contours of hebephilia and the reliability of the diagnosis. The scientific literature demonstrates that, before the proposal to revise the DSM-5 to include hebephilia as a subset of pedohebephilia, the term was often used to mean an attraction to a broader category of adolescents or teenagers. The work of Dr. Blanchard and others seeking to define it as a preferential attraction to children in Tanner stages II and III constitutes a relatively recent attempt to lend objectivity and limitation to the diagnosis. But applying Tanner scale classifications is difficult in the real world, where records of sexual offenses against children provide only their ages and where the diagnosis is often, if not usually, made without PPG testing. Moreover, while some experts oppose pathologizing any attraction to pubescent children, others regard the proposed definitional contours as over-inclusive, given that the ICD-10 limits the diagnosis of a paraphilia to those with an attraction to “early” pubescent children, which arguably do not include those who have reached Tanner stage III. Concerns about over-inclusiveness are exacerbated by the age range guideline of 11 to 14, which does not seem to comport with medical studies correlating physical maturation with decreasing ages in modern society.
Indeed, the lack of consistent definition and reliability concerns are reflected in the pre-Frye hearing case law, where *1056 diagnoses of hebephilia were based on sex offenses against “teenagers” and “adolescents.”[12] For example, in Shannon S., the majority described the condition as being manifested by an erotic preference for underage “adolescent females,” and two of three victims whose ages were provided were beyond the hebe-philic age guideline of 11 to 14 (20 NY3d at 102, 107-108). (Such facts may have contributed to the dissenters’ outright rejection of the hebephilia diagnosis on its face.) Similarly, in Matter of State of New York v Alfredo M., the respondent was given a diagnosis of hebephilia based on sexual abuse of at least two “adolescents” over the age of 14 (96 AD3d 1068 [2d Dept 2012], lv denied 19 NY3d 816 [2012]). And in Matter of State of New York v Spencer D., the Court upheld a finding of mental abnormality where hebephilia was defined in that case as “an attraction to post-pubescent teenage boys” (96 AD3d 768, 770 [2d Dept 2012]).
In conclusion, this court holds that the State has failed to meet its burden of showing that OSPD hebephilia, as its experts define it here, has attained general acceptance among professionals who research and work with sex offenders and others who have paraphilias. The court is in no position to hold any particular view regarding the merits of the proposed diagnosis and its reliability. But clearly there is such a debate. And the concerns being aired in the debate provide support for the court’s conclusion that the many experts who have opposed the proposed DSM-5 diagnosis reasonably believe that further research is required before the diagnosis of hebephilia, as defined and proffered in this case, is generally accepted as reliable in the relevant psychiatric community. Accordingly, respondent’s motion to preclude testimony regarding a diagnosis of OSPD hebephilia is granted.
Ordered that evidence of the specifier hebephilia is not admissible at the trial on whether respondent suffers a mental abnormality within the meaning of article 10 of the Mental Hygiene Law.

. Petitioner also submitted the report of Dr. Stuart M. Kirschner, who examined respondent pursuant to Mental Hygiene Law § 10.06 (d). Respondent submitted the report of Dr. Eric N. Schlosser, who examined respondent pursuant to Mental Hygiene Law § 10.06 (e).

. While not directly challenged in this case, this court agrees with decisions holding that the relevant scientific community generally accepts the DSM-5’s two broad diagnostic categories for unlisted paraphilias, OSPD and UPD (see Matter of State of New York v Kareem M., 51 Misc 3d 1205[A], 2016 NY Slip Op 50427[U] [Sup Ct, NY County 2016]; Matter of State of New York v Mercado, 50 Misc 3d 512, 522 [Sup Ct, Kings County 2015]; Matter of State of New York v Harris, 48 Misc 3d 950 [Sup Ct, Bronx County 2015]).

. The DSM-IV had described a “paraphilia” generally as follows: “The essential features of a Paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving (1) nonhuman objects, (2) the suffering or humiliation of oneself or one’s partner, or (3) children or other non-consenting persons . . . .” (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 566 [4th ed 1994].)

. See Ray Blanchard et al., Sexual Attraction to Others: A Comparison of Two Models of Alloerotic Responding in Men, 41 Arch Sex Behav 13 (2012); see also Ray Blanchard et al., Pedophilia, Hebephilia, and the DSM-V, 38 Arch Sex Behav 335 (2009); Ray Blanchard, A Dissenting Opinion on DSM-5 Pedophilic Disorder, 42 Arch Sex Behav 675 (2013).

. Dr. Thornton testified that the alloerotic distribution patterns reported in Dr. Blanchard’s study mirror the results reported in an article published in 1973 (see Kurt Freund et al., Heterosexual Aversion in Homosexual Males, 122 Brit J Psychiatry 163 [1973]).

. See e.g. James M. Cantor, The Errors of Karen Franklin’s Pretextuality, 11 Intl J Forensic Mental Health 59 (2012); K.M. Beier et al., Hebephilia as a Sexual Disorder, 83 Fortschr Neurol Psychiatr 128 (2015).

. The authors of the textbook chapter, and other articles received into evidence, report that hebephilia is a condition that has been discussed in the literature for decades and is mentioned in at least 100 texts, although the term has not been uniformly defined.

. See Karen Franklin, Hebephilia: Quintessence of Diagnostic Pretextuality, 28 Behav Sci Law 751 (2010); see also Thomas K. Zander, Adult Sexual Attraction to Early-Stage Adolescents: Phallometry Doesn’t Equal Pathology, 38 Arch Sex Behav 329 (2008).

. See Allen Frances & Michael B. First, Hebephilia Is Not a Mental Disorder in DSM-FV-TR and Should Not Become One in DSM-5, 39 J Am Acad Psychiatry L 78 (2011); Paul Good & Jules Burstein, Hebephilia and the Construction of a Fictitious Diagnosis, 200 J Nervous & Mental Disease 492 (2012); Cynthia Calkins Mercado & Robert A. Beattey, Is That ‘Normal’ Behavior?, 43 APA Monitor on Psychol 25 (2012); Robert Prentky & Howard Barbaree, Commentary: Hebephilia — A Would-be Paraphilia Caught in the Twilight Zone Between Prebubescence and Adulthood, 39 J Acad Psychiatry L 506 (2011); Gregory DeClue, Should Hebephilia Be a Mental Disorder? A Reply to Blanchard et al., 38 Arch Sex Behav 317 (2008).

. Bruce Rind & Richard Yuill, Hebephilia as Mental Disorder? A Historical, Cross-Cultural, Sociological, Cross-Species, Non-Clinical Empirical, and Evolutionary Review, 41 Arch Sex Behav 797 (2012); Bruce Rind, Critique of Hames and Blanchard (2012), Clancy (2012), and Ryniker (2012) on Hebephilia, Anthropological Data, and Maladaptiveness, 42 Arch Sex Behav 685 (2013).

. This court did not have Dr. Franklin’s testimony before it, but in Ralph P. the court summarized her literature review as follows:
“She found that of 116 scholarly articles on the subject 51% were negative, 26% mentioned the issue but did not take a position, 13% were favorable but came from CAMH and 10% were favorable but did not come from CAMH. Comparing the 71 articles which took a position but excluding the CAMH articles, she found that 83% opposed the diagnosis and 17% were in favor of it” (53 Misc 3d at 523; see also Hugh H. [Sup Ct, Suffolk County, July 20, 2016, Pitts, J., index No. 14158/15 at 3]).

. “Adolescence begins with the onset of physiologically normal puberty, and ends when an adult identity and behaviour are accepted. This period of development corresponds roughly to the period between the ages of 10 and 19 years” (Sacks, Age Limits and Adolescents, 8 Paediatric Child Health 577, 577 [2003]). Merriam-Webster online similarly defines adolescence as “the period of life from puberty to maturity terminating legally at the age of majority” (Merriam-Webster Online Dictionary, adolescence [www.m-w.com/ dictionary/adolescence] [accessed Sept. 7, 2016]).