Matter of Miguel II. v State of New York (2018 NY Slip Op 07210)





Matter of Miguel II. v State of New York


2018 NY Slip Op 07210


Decided on October 25, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 25, 2018

524835

[*1]In the Matter of MIGUEL II., Appellant,
v
STATE OF NEW YORK, Respondent.

Calendar Date: September 13, 2018

Before: Egan Jr., J.P., Clark, Mulvey, Aarons and Pritzker, JJ.


Sheila E. Shea, Mental Hygiene Legal Service, Albany (Matthew W. Bliss of counsel), for appellant.
Barbara D. Underwood, Attorney General, Albany (Kathleen Treasure of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.P.
Appeal from an order of the Supreme Court (Farley, J.), entered December 19, 2016 in St. Lawrence County, which partially granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, for his discharge and/or release to the community under a regimen of strict and intensive supervision and treatment.
Petitioner has a history of committing sexually violent offenses dating back to 1972, which includes five rapes, and, as a result, he has been incarcerated for the majority of his adult life. He was last sentenced to a period of incarceration in 1993 following his conviction for attempted sodomy in the first degree, for which he was sentenced to a prison term of 6 to 12 years. In 2006, as the expiration of his aggregate prison term was approaching, petitioner was civilly committed under Mental Hygiene Law article 9. In 2007, following the enactment of Mental Hygiene Law article 10, respondent commenced a proceeding for the civil management of petitioner. In conjunction therewith, an evaluation report was filed, diagnosing petitioner with paraphilia not otherwise specified (hereinafter PNOS), antisocial personality disorder, alcohol abuse and cannabis abuse. Petitioner thereafter waived his right to both a probable cause hearing and a trial (see Mental Hygiene Law § 10.07) and consented to his commitment to a secure treatment facility. Each year thereafter, as part of the statutorily required annual review process (see Mental Health Law § 10.09), petitioner was evaluated by a psychiatric examiner and, each time, it was determined that petitioner remained a dangerous sex offender requiring confinement.
In March 2016, petitioner commenced this proceeding seeking, among other things, an evidentiary hearing to determine whether he remained a dangerous sex offender requiring confinement, and a court-appointed psychiatric examiner was designated. Petitioner thereafter moved to preclude "all testimony regarding the psychiatric diagnosis of other specified paraphilic disorder [hereinafter OSPD] (nonconsent)" or, alternatively, for a Frye hearing to determine whether said diagnosis is generally accepted within the relevant scientific community (see Frye v United States, 293 F 1013 [1923]). Respondent opposed petitioner's motion and, following oral [*2]argument, Supreme Court denied same. The matter then proceeded to an evidentiary hearing wherein Kevin Burgoyne, a psychiatric examiner employed by the Office of Mental Health, and Jeffrey Singer, the court-appointed psychiatric examiner, provided expert testimony as to whether petitioner remained a dangerous sex offender requiring confinement. Following the hearing, Supreme Court determined that, although petitioner continued to suffer from a mental abnormality (see Mental Hygiene Law § 10.03 [i]), respondent failed to establish that petitioner remained a dangerous sex offender requiring confinement and released petitioner to a regimen of strict and intensive supervision and treatment. Petitioner now appeals, contending, among other things, that Supreme Court abused its discretion in denying his request for a Frye hearing/order of preclusion.
It is well settled that "expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has gained general acceptance in its specified field" (People v Wesley, 83 NY2d 417, 422 [1994] [internal quotation marks and citation omitted]). "The general acceptance of novel scientific evidence such as a psychological syndrome may be established through texts and scholarly articles on the subject, expert testimony, or court opinions finding the evidence generally accepted in the relevant scientific community" (People v Wernick, 215 AD2d 50, 52 [1995], affd 89 NY2d 111 [1996]; see Parker v Mobil Oil Corp., 7 NY3d 434, 446-447 [2006]; People v Wesley, 83 NY2d at 437; People v Middleton, 54 NY2d 42, 49-50 [1981]). The burden of proving general acceptance in the relevant scientific community rests on the party presenting the disputed evidence (see Matter of State of New York v Hilton C., 158 AD3d 707, 709 [2018]).
Here, OSPD (nonconsent) is the primary diagnosis upon which respondent relied to demonstrate that petitioner suffered from a mental abnormality under Mental Hygiene Law article 10. Citing the lack of specific diagnostic criteria, petitioner contends that this diagnosis is "junk science" that has not gained general acceptance in the scientific community and, therefore, cannot support a finding of mental abnormality. In support of his application for a Frye hearing, petitioner submitted, among other things, Singer's affidavit, scientific literature in the form of professional articles discussing the controversial nature of PNOS (nonconsent) — the predecessor diagnosis of OSPD (nonconsent) — and questioning its general acceptance in the relevant scientific community, as well as various trial court decisions that, following Frye hearings, have concluded that OSPD (nonconsent) is not a generally accepted diagnosis within the relevant psychiatric and psychological communities. In opposition, respondent tendered an attorney's affidavit and three trial court decisions — two of which concluded that no Frye hearing was necessary — but no scientific literature or professional affidavits. Although we recognize that OSPD is a defined and recognized diagnosis in the Fifth Edition of the American Psychological Association's Diagnostic and Statistical Manual of Mental Disorders (hereinafter DSM) and that the Court of Appeals has recognized that PNOS — OSPD's predecessor diagnosis — is sufficient to support a finding of mental abnormality (see State of New York v Shannon S., 20 NY3d 99, 107 [2012], cert denied 568 US 1216 [2013]), we note that Shannon S. did not determine the issue presently before us, i.e., whether the OSPD (nonconsent) diagnosis has received general acceptance in the psychiatric and psychological communities (see Matter of State of New York v Donald DD., 24 NY3d 174, 187 [2014]).[FN1]
The Second Department and the numerous other trial courts that have previously considered whether OSPD (nonconsent) and/or its predecessor diagnosis, PNOS (nonconsent), are generally accepted in the relevant psychiatric and psychological communities have concluded that said diagnoses do not meet the Frye standard and, therefore, should not be considered in determining whether an individual suffers from a mental abnormality (see e.g. Matter of State of New York v Richard S., 158 AD3d 710 [2018]; Matter of State of New York v Jason C., 51 Misc [*3]3d 553 [Sup Ct, Kings County 2016]; Matter of State of New York v Kareem M., 51 Misc 3d 1205[A] [Sup Ct, NY County 2016]; see also Matter of State of New York v Charada T., 59 Misc 3d 1205[A] [Sup Ct, NY County 2018]; compare Matter of Patrick L., 52 Misc 3d 753 [Sup Ct, St. Lawrence County 2016]). Although these decisions are not binding on this Court (see Matter of County of St. Lawrence v Daines, 81 AD3d 212, 219 [2011], lv denied 17 NY3d 703 [2011]), they are persuasive as to whether a Frye hearing is necessary to determine whether OSPD (nonconsent) has attained general acceptance in the relevant scientific community. Indeed, at the Mental Hygiene Law article 10 hearing before Supreme Court, both experts acknowledged the controversial nature of the OSPD (nonconsent) diagnosis, and Supreme Court, in rendering its decision, likewise acknowledged that it was a "highly controversial" diagnosis. Thus, given the controversial nature of the OSPD (nonconsent) diagnosis, on the record before us, we conclude that Supreme Court's denial of petitioner's application for a Frye hearing was improper. Accordingly, we remit this matter to Supreme Court to conduct a Frye hearing, addressing the question of whether the diagnosis of OSPD (nonconsent) has achieved general acceptance in the psychiatric and psychological communities (see Matter of State of New York v Richard S., 158 AD3d at 711-712). In light of our holding, we need not address petitioner's remaining contentions.
Clark, Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the decision is withheld, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Perhaps tellingly, following its decision in Shannon S., the Court of Appeals specifically questioned whether PNOS would survive a Frye hearing as to whether it has gained general acceptance in the psychiatric and psychological communities — a question upon which the Court has yet to render a determination (see Matter of State of New York v Donald DD., 24 NY3d at 186).